USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/24/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

EX PARTE APPLICATION OF N3RVE, LLC

APPLICANT.

**REPORT AND RECOMMENDATION ON MOTION FOR DISCOVERY PURSUANT TO SECTION 1782**

**26-MC-248 (GHW) (KHP)**

**TO: HON. GREGORY H. WOODS, United States District Judge**
**FROM: HON. KATHARINE H. PARKER, United States Magistrate Judge.**

Presently before this Court for a report and recommendation is N3RVE, LLC's ("Applicant") Application for discovery pursuant to 28 U.S.C. § 1782 for documents to be used in anticipated foreign civil and administrative proceedings in Korea, following an investment agreement that deteriorated. (ECF No. 1). The targets of the subpoenas are JPMorgan Chase Bank, N.A.; Bank of America, N.A.; Iliad Holdings, LLC; and Genesis BBQ USA, LLC ("Respondents").

## BACKGROUND FACTS

N3RVE, LLC, an entity that identifies and develops recording artists and songwriters and promotes music, among other things, has submitted an ex parte application seeking discovery from JPMorgan Chase Bank, N.A.; Bank of America, N.A.; Iliad Holdings, LLC; and Genesis BBQ USA, LLC ("Respondents") for documents to be used in anticipated foreign civil and administrative proceedings in Korea. (ECF No. 2 ("Motion for Discovery"), at 1). Applicant is contemplating filing a civil action against Yoon Hong Geun ("Yoon"), Kyung Won Yoon ("Kyung"), Genesis BBQ Group ("Genesis Korea"), and Iliad Holdings, LLC ("Iliad Holdings" or "Iliad") for breach of contract and tort causes of action, in addition to pursuing administrative

actions against Yoon, Kyung, Genesis Korea, and Iliad Holdings for alleged violations of foreign exchange, anti–money laundering, and tax regulations. *Id.* at 1.

By way of background, Chris Kalargiros is the founder and manager of N3RVE. (ECF No. 2-1 ("Kalargiros Decl"), ¶ 2). In that capacity, Kalargiros began discussions with Yoon, the controlling owner of Genesis Korea, regarding a potential investment of 5 million dollars ("Subject Funds") in N3RVE (for a 20 percent stake). *Id.* ¶ 4. Once such an agreement was reached, the 5 million dollars was to be transferred to N3RVE by Genesis BBQ USA, LLC ("Genesis USA"). *Id.* A Membership-Interest Subscription Agreement ("Agreement") summarizing this investment was executed on June 20, 2022. *Id.*, Exh. 1, at 4. After the Agreement was signed, Yoon sought revisions to the terms of the Agreement, including that the investment would be paid in two tranches: one tranche of 1.5 million dollars to be paid immediately and a second tranche of 3.5 million dollars to be paid after one year if N3RVE was valued at 75 million dollars. *Id.* ¶ 5. However, Applicant alleges that Yoon wanted it stipulated in the written contract that the second tranche would only be paid if N3RVE was valued at 250 million dollars after its third year but provided assurances that the second tranche would *actually* be paid when N3RVE was valued at 75 million in its first year. *Id.* Under the revised agreement, the investment was to be paid through Iliad Holdings, a Wyoming company controlled by Yoon and Kyung. *Id.* N3RVE consented to the modified terms. *Id.* ¶ 6.

On October 11, 2022, Kyung wired 1.5 million dollars from her Bank of America account in New York to Iliad's JPMorgan Chase account in New York, and on October 12, 2022, Iliad Holdings wired the 1.5 million dollars to N3RVE's JPMorgan Chase account in New York. *Id.* ¶ 7–8. Yoon's son, Allen Yoon, confirmed that Yoon would provide the remaining 3.5 million dollars,

so long as N3RVE reached the agreed-upon first-year valuation (of 75 million). *Id.* ¶ 9. Despite N3RVE reaching this benchmark, Yoon did not release the remaining 3.5 million dollars. *Id.* ¶ 11–12.

Communications between Yoon and N3RVE then ceased, allegedly causing severe harm to N3RVE's business, including the loss of a credit facility, partnerships, and inability to pay developers and engineers. *Id.* ¶ 13. As a result, along with rising regulatory concerns, N3RVE retained DongIn Law Group, a Korean law firm, to provide an opinion and summary on potential causes of action against Genesis Korea, Yoon, Kyung, and Iliad Holdings. *Id.* ¶¶ 15–19. N3RVE is now anticipating filing civil actions in the Seoul Central District Court alleging breach of contract, harmful use of a nominee structure, and abuse of rights. *Id.* ¶¶ 19–20. N3RVE has sent demand letters to the contemplated defendants and notified them of their obligation to preserve documents relevant to the contemplated action. *Id.* ¶ 21.

The subpoenas to Genesis USA and Iliad Holdings request documents and communications related to both corporations' formation and structure, the Subject Funds, and N3RVE. (ECF 2-3 ("Genesis USA Subpoena"), at 7; ECF No. 2-4 ("Iliad Holdings Subpoena"), at 7–8). The subpoena to Iliad Holdings also seeks bank statements and documents related to the transfer of the $1.5 million from Kyung to Iliad Holdings and from Iliad Holdings to N3RVE. (Iliad Holdings Subpoena, at 7–8). The subpoenas to Bank of America and JPMorgan Chase seek account documents and bank statements for accounts owned by Iliad, N3RVE, Yoon, and Kyung, and communications, that relate to the transfer of the Subject Funds or N3RVE. (ECF No. 2-5 ("JPMorgan Chase Bank Subpoena"), at 7; ECF No 2-6 ("Bank of America Subpoena"), at 7). All of Applicant's requests span from January 1, 2022, to the present.

## LEGAL STANDARDS

Section 1782 empowers a U.S. district court to order any person residing within its jurisdiction to provide discovery for use in a foreign proceeding upon the application of an interested party. 28 U.S.C. § 1782(a). Applicants for discovery under Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal,' and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)).

Provided the statutory requirements for discovery are met, the Court must then determine, in its discretion, whether the discovery should be permitted in light of the four so-called *Intel* factors. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign proceeding;
- The nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance;
- Whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and
- Whether the discovery is unduly intrusive or burdensome.

*Id.*, at 264-65. When evaluating these factors, the Court must be mindful of the goals of Section 1782: to provide efficient means of assistance to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to U.S. courts. *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

## DISCUSSION

### I. Section 1782's Statutory Requirements

Because the application was filed ex parte and is not currently opposed, I will address each of the statutory requirements in full.

A. The First Factor

The first requirement of Section 1782—that the person or entity from whom discovery is sought "reside[] or [be] found" in the relevant district—is intended to mirror "the limits of personal jurisdiction consistent with due process." *In re Del Valle Ruize*, 939 F.3d 520, 523–24 (2d Cir. 2019); *see also In re Edelman*, 295 F.3d 171, 178–79 (2d Cir. 2002) (endorsing a "flexible reading" of the statute's "resides or is found" language). This interpretation is broad, like the Court's interpretation of general and specific jurisdiction. *Id.* at 528.

Courts routinely find that JPMorgan Chase and Bank of America can be found in this District in Section 1782 actions insofar as JPMorgan Chase has its principal place of business in this District, and Bank of America has a multitude of locations and significant activity in this District. *See, e.g.*, *In re Saul Klein*, No. 23 MC 211, 2023 WL 8827847, at *7 (S.D.N.Y. Dec. 21, 2023) (finding that JPMorgan Chase Bank, N.A., has its principal place of business in New York, providing this Court with general jurisdiction); *In re Rodriguez Guillen*, No. 20 MC 102, 2020 WL 3497002 (S.D.N.Y. June 29, 2020) (finding that Bank of America is found in the Southern District of New York because it "has significant activity, owns properties, has numerous office locations, and maintains facilities in the district" and because the bank branch that processed the relevant transaction was located in the district); *see also In re JSC BTA Bank*, 577 F. Supp. 3d 262, 266 (S.D.N.Y. 2021) (finding that the first statutory requirement of Section 1782 was met where the

respondent banks each had an office and did business in the Southern District of New York).

Unlike the two Respondent banks, neither Iliad Holdings nor Genesis USA are New York corporations or have a principle place of business in New York or are alleged to conduct significant business in this District. All that is alleged is that they have offices in New York. It is well established that the Court cannot exercise general jurisdiction where a corporation is not at home within a state—*i.e.*, is incorporated and/or has its principal place of business elsewhere. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *In re Petrobas Sec. Litig.*, 393 F. Supp. 3d 376, 382–83 (S.D.N.Y. 2019) (finding that where a respondent was incorporated and had its principal place of business in another country, the court could not exercise general jurisdiction over it). Nonetheless, courts have held that a corporation may be found within this District for Section 1782 purposes when specific jurisdiction exists over the respondent entity. *See, e.g.*, *In re Kuwait Ports Authority*, No. 20 MC 46, 2021 WL 5909999, at *7 (S.D.N.Y. Dec. 13, 2021); *In re Republic of Kazakhstan*, No. 23 MC 283, 2023 WL 8373070, at *3 (S.D.N.Y. Dec. 4, 2023).

For specific jurisdiction to exist, the Court must first find that there are "sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013). Therefore, the jurisdictional analysis proceeds in two parts: first, whether the litigation arises out of the corporation's activities in the relevant state, and second, whether the exercise of jurisdiction complies with the notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Second Circuit has found that specific jurisdiction exists when a defendant used an account based in a

district to conduct the subject activity, such as a transfer of funds. *Licci ex rel. Licci*, 732 F.3d at 170–74. In Section 1782 actions, courts in this District have similarly found that when a respondent took part in a transaction or conduct relevant to the issues in the foreign proceeding in the District, the respondent entity can be "found" in the District. *See, e.g., In re Kuwait Ports Authority*, 2021 WL 5909999, at *7 (finding that where a respondent had facilitated a funds transfer through New York bank accounts and there was an "articulable nexus" between the subject transaction and the conduct underlying the application, the court had personal jurisdiction); *In re Republic of Kazakhstan*, 2023 WL 8373070, at *3 (finding that a respondent's office in the district was sufficient contacts, when paired with the fact the discovery sought was based on the respondent's conduct in the district and contracts governed by the relevant law); *In re Brookfield Infrastructure Partners L.P.*, No. 24 MC 533, 2025 WL 1503942, at *14 (S.D.N.Y. May 27, 2025) (finding that where a company was headquartered outside of the district and only had an office in New York that the subject conduct was not tied to, the contacts were insufficient for the respondent to be found in the district).

Based on the above, because Genesis USA is a New Jersey corporation that does not have a principal place of business in New York and whose New York office is not alleged to have any relationship to the transactions at issue in the contemplated foreign proceeding, it cannot be "found" in this District for purposes of Section 1782. *See, e.g.*, *In re Brookfield Infrastructure Partners L.P.*, 2025 WL 1503942, at *14; *In re Republic of Kazakhstan*, 2023 WL 8373070, at *3. *See also In re Klein*, 2022 WL 1567584, at *5 (finding that where the applicant had only provided office locations and did not explain how the forum contacts were casually related to the materials sought, the respondents could not be found in the relevant district). Iliad

Holdings, on the other hand, is alleged to have a bank account in New York and to have transferred money through New York to N3RVE. (Motion for Discovery, ¶ 16). This allegation is sufficient for Iliad holdings to be "found" in New York for purposes of Section 1782. *In re Kuwait Ports Authority*, 2021 WL 5909999, at *7; *see also Ge Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 382 (S.D.N.Y. 2013) (finding that where a party used New York bank accounts to "shelter significant and repeated transfers of funds" related to the underlying claim, the transaction of business constituted sufficient contacts). Therefore, only Iliad Holdings and the Respondent banks can be found in the Southern District of New York for the purposes of Section 1782. *In re JSC BTA Bank*, 577 F. Supp. 3d at 266. Given that this factor is not met with respect to Genesis USA, I do not include it in further analysis below.

B. The Second Factor

The second factor—that the discovery is "for use in a foreign proceeding"—is intended to prevent parties from using Section 1782 as a vehicle for "fishing expeditions." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 128 (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)). The applicant must demonstrate that there is a pending or imminent foreign proceeding and that it is adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998)). And, to distinguish an application from a "fishing expedition" and for discovery to be of use, it must be able to be used for "some advantage" in the related foreign proceeding. *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).

To be within reasonable contemplation, a proceeding must be more than a "twinkle" in the applicant's eye. *Certain Funds, Accounts and/or Invest. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123–24 (2d Cir. 2015); *see Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir.

2020). Generally, where a legal theory has been developed, an attorney hired, and other steps taken to imminently file the foreign action, courts have found that the foreign proceeding is in reasonable contemplation for purposes of Section 1782. *See, e.g., In re Mutabagani*, No. 22 MC 299, 2023 WL 2811621, at *3 (S.D.N.Y. Apr. 6, 2023) (finding that where the applicant's attorney had submitted a sworn statement stating the applicant's intent to sue, describing the applicable legal theory, and explaining how the discovery would be used, the anticipated proceeding was within reasonable contemplation); *In re SPS I Fundo de Investimento de Acoes – Investmento no Exterior*, No. 22 MC 118, 2022 WL 17553067, at *4 (S.D.N.Y. Dec. 9, 2022) (finding that where there was a draft complaint and a sworn statement from applicant's counsel attesting to the intent to initiate the proceedings and outlining the legal theories, the foreign proceeding was reasonably contemplated).

Here, there are indications that the anticipated foreign proceeding is reasonably contemplated. First, Applicant has retained Korean legal counsel, who in turn prepared an opinion outlining the basis for the Korean proceeding and the contemplated causes of action for tort liability on breach of contract, abuse of rights, and harmful use of a nominee structure against Iliad and the Yoon Parties. (Motion for Discovery, at 9; Kalargiros Decl., ¶¶ 15–16, Exh. 4). Further, the legal counsel's opinion outlined that it was their finding that the Yoon's conduct provided a basis for tort liability, in addition to contractual liability, and that N3RVE could bring an action for damages. (Kalargiros Decl., ¶¶ 15–16, Exh. 4). Additionally, the legal opinion highlighted that the discovery requested—"documents regarding the source and the current whereabouts of such funds"—would provide admissible evidence for use in the contemplated Korean proceedings. *Id.* Additionally, demand letters have been sent to the

parties in the contemplated Korean proceeding, along with documentation outlining document preservation and disclosure obligations. (Motion for Discovery, at 9–10; Kalargiros Decl., ¶ 21). These measures exceed more than a mere "twinkle in counsel's eye," and the foreign proceedings are reasonably contemplated. *In re Mutabagani*, 2023 WL 2811621, at *3 (quoting *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 677 (2d Cir. 2022)); *In re SPS I Fundo de Investimento de Acoes–Investmento no Exterior*, 2022 WL 17553067, at *4.

For discovery to be able to be used for "some advantage" in the related foreign proceeding, the materials requested need merely be for use "at some stage of a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d at 132 (quoting *Mees*, 793 F.3d at 301). Here, the records sought from the Respondent banks could be used to show the source and location of the funds not transferred pursuant to the contract, and the records sought from Iliad Holdings could be used to show the corporate structure of Iliad Holdings and the communications related to Yoon's contractual obligations. (Kalargiros Decl., Exh. 4). This evidence would go to support N3RVE's contemplated civil causes of action related to breach of contract, abuse of rights, and harmful use of a nominee structure. Thus, the second factor is satisfied as to the Banks and Iliad Holdings.

C. <u>The Third Factor</u>

Finally, the third factor—that the applicant show that they "possess a reasonable interest in the foreign proceeding"—is satisfied where an applicant is a party to the foreign proceeding. *Intel*, 542 U.S. at 256. Here, Applicant would be a party to the contemplated civil court action, meaning Applicant is an interested party.

In sum, I recommend that the Court find that the statutory factors are met with respect to

the two banks and Iliad Holdings.

**II. *Intel* Factors**

Once the Court has determined that an applicant's request for discovery has satisfied the statutory requirements of Section 1782, the Court turns to the discretionary *Intel* factors. *Intel Corp.*, 542 U.S. at 241.

A. The First *Intel* Factor

The Court first considers whether the party "from whom discovery is sought" is a party or participant in the foreign proceeding. *Associacão dos Profissionais dos Correios*, No. 22 MC 132, 2022 WL 4955312, at *4 (S.D.N.Y. Oct. 4, 2022) (citing *Intel Corp.* 542 U.S. at 264–654). Here, the Court considers whether the foreign court can exercise jurisdiction over the producing party because the party is appearing before it in the underlying foreign proceeding, or if discovery assistance from a U.S. court is warranted. *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58–59 (2d Cir. 2024) (citing *Intel*, 542 U.S. at 264). Further, in considering this factor, the Court looks to who the *actual* discovery target is, not who the stated target is. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 228, 245 (2d Cir. 2018). In the instance of an applicant requesting the banking records of participants in the foreign proceedings, the Court has found that this is *in substance* seeking the records of the parties themselves. *In re Saul Klein*, No. 23 MC 211, 2023 WL 8827847, at *10 (S.D.N.Y. Dec. 21, 2023).

Here, Applicant is seeking to bring the contemplated foreign actions against Genesis Korea, Yoon, Kyung, and Iliad Holdings. (Kalargiros Decl. ¶ 20). The proposed subpoenas would be issued to Iliad Holdings, JP Morgan Chase Bank, and Bank of America. (ECF Nos. 2-3; 2-4; 2-5; 2-6). Iliad Holdings is a contemplated party to foreign proceeding, meaning that this factor

weighs against granting discovery as it relates to Iliad. *See, e.g.*, *In re DNG FZE*, No. 23 MC 435, 2024 WL 124694, at *3 (S.D.N.Y. Jan. 11, 2024) (finding that the first *Intel* factor weighed against an applicant where discovery was sought from the employee of a participant in the foreign proceeding). Although Bank of America and JPMorgan Chase are not contemplated parties to the foreign proceeding, the substance of the requests in their subpoenas—account records, statements, and payment confirmations for N3RVE, Iliad, Kyung, Yoon, and Genesis—are documents that the account holders and contemplated parties to the civil proceedings (the Yoons, Genesis Korea,[1] and Iliad) would have. Insofar as the subpoenas request documents related to N3RVE's own accounts, these are also documents that N3RVE itself should already have. Therefore, Applicant is in essence requesting these documents from the parties themselves, and this factor weighs against granting discovery as it relates to Bank of America and JPMorgan Chase. *See, e.g.*, *In re Saul Klein*, 2023 WL 8827847, at *10 (finding that where the applicant was subpoenaing the bank that held the records of the parties to the foreign proceeding, the applicant was in essence requesting the records of the parties themselves). Given that the Korean courts will likely be able to exercise jurisdiction here, this factor weighs against granting discovery as it relates to discovery Applicant seeks from Iliad Holdings and the Respondent banks.

B. <u>The Second *Intel* Factor</u>

The second *Intel* factor is whether the foreign government would be receptive to discovery

[1] Genesis USA ("Genesis") is an affiliate of Genesis Korea. (Kalargiros Decl. ¶ 4). However, this does not impact the analysis as this Court has found that subpoenas served on U.S. affiliates are essentially served on the foreign adversary itself. *Matter of Hranov.*, No. 21 MC 751, 2024 WL 2193866, at *4 (S.D.N.Y. May 15, 2024) ("The Second Circuit and the courts of this District have held that the first *Intel* factor weighs against an applicant who seeks discovery from its foreign adversary through a section 1782 subpoena served upon its United States agent or affiliate").

obtained in the U.S. courts. Under this factor, the Court considers whether there has been an authoritative declaration by the respective foreign tribunal as to whether it objects to foreign discovery assistance. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100–102 (2d Cir. 1995). Here, the Applicant has asserted that "Korean law evinces receptivity to the evidence" sought. (Motion for Discovery, at 11; Kalargiros Decl. ¶ 19, Exh. 4). Courts also have recognized that Korean courts are receptive to discovery obtained in the United States. *See, e.g., In re Tylor Grp. LLC*, No. 25 MC 420, 2025 WL 3281520, at *2 (S.D.N.Y. Nov. 25, 2025) (accepting counsel's statement that Korean courts are accepting of evidence obtained by "any lawful means"); *see also In re Youngpoong Corp.*, No. 25 MC 194, 2025 WL 3228034, at *3 (S.D.N.Y. Nov. 19, 2025) (affirming respondents' acknowledgement that "no Korean court ha[d] explicitly stated that it opposes discovery obtained in a foreign jurisdiction unilaterally by a litigant" (internal citations omitted)). Therefore, this factor weighs in favor of granting Applicant's request with respect to all three remaining Respondents.

<u>The Third *Intel* Factor</u>

The third *Intel* factor is whether the applicant is trying to avoid particular restrictions on discovery or proof gathering in the foreign country. *Intel*, 542 U.S. at 265. An applicant may not make a Section 1782 application to obtain pre-suit discovery and circumvent the foreign court's procedural requirements. *Banoka S.à.r.l. v. Elliot Mgmt. Corp.*, 148 F.4th 54, 62 (2d Cir. 2025) (finding that the English courts would be unlikely to allow pre-suit discovery and that this weighed against granting the application); *see also In re Postalis*, No. 18 MC 497, 2018 WL 6725406, at *6 (S.D.N.Y. Dec. 20, 2018) (finding that "to the extent [the applicant] brings this application for the purpose of obtaining pre-litigation discovery – a purpose that [the applicant]

has admitted – [the applicant] seeks to circumvent the laws and policies of the United States" and the third factor weighs against the applicant); *Associacão dos Profissionais dos Correios*, 2022 WL 4955312, at *7 (finding that where an applicant had publicly stated it was seeking to bring suit in the United States, but then alleged these ambitions were abandoned, the applicant was likely improperly seeking pre-suit discovery and the third factor weighed against the applicant); *In re Application of Shervin Pishevar for an Order to Take Discovery for Use in a Foreign Proceeding*, 439 F. Supp. 3d 290, 305 (S.D.N.Y. 2020) (finding that where the granting of the application would run afoul of U.S. public policy protecting a reporter's privilege, the third *Intel* factor weighed against the applicant). At the same time, applicants do not have to exhaust the discovery options in the foreign courts prior to filing a Section 1782 application. *Euromepa S.A.*, 51 F.3d at 1098 ("[T]his Court has also refused to engraft a "quasi-exhaustion requirement" onto section 1782 that would force litigants to seek 'information through the foreign . . . tribunal' before requesting discovery from the district court." (internal citations omitted)); *In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, No. 23 MC 208, 2024 WL 555780, at *12 (S.D.N.Y. Jan. 18, 2024) (noting that there is not an exhaustion requirement in Section 1782 applications).

Here, Applicant's requested discovery is generally related to the civil actions it is contemplating bringing, and there does not appear to be any indication that Applicant is seeking to bring a U.S. action or seeking to circumvent the proof-gathering procedures of the Korean courts. Further, as outlined above, Applicant does not have to exhaust discovery options in the Korean courts prior to filing the instant application. Therefore, this factor weighs in favor of granting Applicant's request as to the three remaining Respondents.

C. The Fourth *Intel* Factor

Finally, the Court considers whether the discovery that the Applicant is seeking is "unduly intrusive or burdensome," running afoul of Federal Rule of Civil Procedure 26 ("Rule 26"). *Intel*, 542 U.S. at 265. Generally, the fourth *Intel* factor is evaluated in conjunction with Rule 26's standards, which requires discovery requests to be narrowly tailored in seeking "information relevant to the parties' claims and defenses and proportional to the needs of the case." *In re Palladian Partners, L.P.*, No. 25 MC 330, 2025 WL 2814719, at *11 (S.D.N.Y. Oct. 3, 2025) (quoting *Aguila Energia e Participações Ltda. V. JPMorgan Chase & Co.*, No. 22 MC 228, 2024 WL 3650347, at *11 (S.D.N.Y. Feb. 29, 2024)). When considering proportionality, the Court considers the issues in the foreign action, the discovery's importance, the parties' relative resources and access, and the overall burden and expense of the requested discovery as weighed against its benefit. *In re Itaû Unibanco S/A – Nassau* Branch, No. 24 MC 459, 2025 WL 918462, at *9 (S.D.N.Y. Mar. 26, 2025).

Courts have found that when subpoenas are overbroad and not tailored to the claims and defenses in the underlying case, the fourth *Intel* factor weighs against granting the subpoena request. *See, e.g., Associacão dos Profissionais dos Correios*, 2022 WL 4955312, at *8 (finding that where the request was broad and not narrowly tailored to the claims and defenses, the fourth factor weighed against granting the application). Here, the requested discovery is not narrowly tailored to the contemplated foreign court proceedings. The contemplated Korean civil causes of action include breach of contract, abuse of rights, and harmful use of a nominee structure. However, from Iliad Holdings, Applicant requests documents and communications related to corporation's formation, the corporation's

structure, the Subject Funds, and N3RVE. (Iliad Holdings Subpoena, at 7–8). Applicant also seeks bank statements related to transfer of funds from Iliad to Genesis, Yoon, Kyung, and N3RVE. *Id.* This request is overbroad insofar as Applicant is requesting documents beyond what is needed to show the improper nominee structure, the subject funds, and the contract in dispute—particularly as the broad requests for transfer information will capture transfers unrelated to the Subject Funds or payment to N3RVE. *Id*. From JPMorgan Chase and Bank of America, Applicant is seeking account documents and bank statements for accounts owned by Iliad and N3RVE, and communications related to the transfer of Subject Funds or N3RVE. (JPMorgan Chase Bank Subpoena, at 7; Bank of America Subpoena, at 7). Applicant's request here is also overbroad insofar as it would capture the account opening documents, bank statements, and payment confirmations beyond those related to the Subject Funds and N3RVE. (JPMorgan Chase Subpoena; Bank of America Subpoena); *see supra*.

Additionally, courts have found that temporally overbroad subpoenas weigh against finding the fourth *Intel* factor has been met. *See, e.g.*, *Associacão dos Profissionais dos Correios*, 2022 WL 4955312, at *8 (finding that where the request spanned an overly broad time period, it weighed against granting the application). Here, all of Applicant's requests span from January 1, 2022, to the present. (Iliad Holdings Subpoena; JPMorgan Chase Subpoena; Bank of America Subpoena). However, the contract, singular payment, and ultimate alleged repudiation of the agreement—occurred in or about 2022 and 2023. (Motion for Discovery, at 4). No explanation for the seemingly broader period is given for the time period in the proposed subpoenas.

Although some of the information sought in the proposed subpoenas is relevant to the Applicant's anticipated claims; the requests are not proportional to the needs of the anticipated

foreign proceeding. *Compare In re Itaû Unibanco S/A – Nassau Branch*, 2025 WL 918462, at *9 (finding that the fourth *Intel* factor weighed against the applicant insofar as it requested information beyond what would be necessary to determine relevant facts)*, with In re Klein*, No. 20 MC 203, 2022 WL 14786787, at *3 (S.D.N.Y. Oct. 26, 2022) (finding that where the applicant had revised the request and made them "relatively narrow in subject matter and temporal scope" and "adequately explained why" the requests were relevant, the motion to quash that particular subpoena should be denied). Therefore, this factor weighs against granting the application, insofar as the requests exceed the necessary scope.

Nevertheless, the Court has discretion to limit the scope of discovery sought in a Section 1782 action where the requests are overbroad or burdensome. *Intel Corp.*, 542 U.S. at 265 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed."); *In re Application of Mediterranean Shipping Co. S.A.*, No. 25 MC 598, 2026 WL 1256429, at *6 (S.D.N.Y. May 7, 2026) (citing *In re Tel. Media Grp. Ltd.*, No 23 MC 215, 2023 WL 5770115, at *1 (S.D.N.Y. Sept. 6, 2023)). Therefore, pursuant to the fourth *Intel* factor, I recommend that the Court limit the scope of discovery and narrows the subpoenas as outlined below.

Here, the proposed subpoenas can be easily narrowed as follows: (1) to a temporal window spanning from January 1, 2022 to December 31, 2023 and (2) revised as outlined below:

- The relevant time period should be from January 1, 2022 to December 31, 2023 for all requests.
- For the Iliad Holdings Subpoena:
    - For items (2) and (3), the request should be narrowed to seek only

documents sufficient to identify the owners and officers/managers. This narrows the language previously in the proposed subpoenas requesting "any and all documents," to lower the burden of the requested discovery.

- For item (4), the request should be narrowed to seek only documents reflecting members ownership interest, capital contributions, distributions, or withdrawals relating to Iliad. This narrows the language previously in the proposed subpoenas requesting "any and all documents," to lower the burden of the requested discovery.
- For items (5), (9), (10), (11), and (12), the request should be tailored to seek only those documents concerning the *funding* of N3RVE. This narrows the language previously in the proposed subpoenas requesting documents related to N3RVE generally, to more accurately reflect the underlying dispute, centered on N3RVE's funding.
- For items (13), (14) and (15), the request should be narrowed to seek only those bank statements related to any payment or potential payment to N3RVE. This narrows the language previously in the proposed subpoenas requesting banking statements and bank account information for any account held by Yoon, Kyung, or Genesis, to target bank account documents related to the Subject Transfer.

- For the JPMorgan Chase Bank and Bank of America Subpoenas
  - For items (1) and (2), the request should be narrowed to seek only those

documents sufficient to show any bank account owned by Iliad or N3RVE at Chase or any bank account owned by Kyung, Yoon, and Genesis USA at Bank of America and records identifying the source of funds for the Subject Transfer. This narrows the language previously in the proposed subpoenas requesting banking statements and bank account information for any account held by Yoon, Kyung, or Genesis, to target only bank account documents related to the Subject Transfer.

- For item (7), the request should be narrowed to seek only documents and/or communications relating to funding to N3RVE. This narrows the language previously in the proposed subpoenas requesting documents related to N3RVE generally, to more accurately reflect the underlying dispute, centered on N3RVE's funding.

**CONCLUSION**

For the reasons set forth above, I recommend that the motions at ECF Nos. 1 and 2 be GRANTED in part and DENIED in part. As it pertains to Applicant's requests for discovery from Genesis USA, I recommend that the application be denied. As it pertains to Applicant's requests for discovery from Iliad Holdings, Bank of America, and JPMorgan Chase Bank, I recommend that the application be granted with the above outlined suggested modifications.

Dated: June 24, 2026
New York, New York

Respectfully submitted,

Katharine H Parker

Katharine H. Parker
U.S. Magistrate Judge

**<u>NOTICE</u>**

**The Plaintiff shall have fourteen days from, and the Respondents shall have fourteen days from service of, this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).**

**Plaintiff shall have fourteen days to serve and file any response. Defendants shall have fourteen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods at the United States Courthouse, 500 Pearl Street, New York, New York 10007-1312, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**